IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LARRY OWENS JR.,

        Plaintiff,

vs.                              Case No. 16-1208-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On November 12, 2014, administrative law judge (ALJ) William H. Rima issued his decision (R. at 65-76). Plaintiff alleges that he has been disabled since November 26, 2012 (R. at 65). Plaintiff is insured for disability insurance benefits

through December 31, 2016 (R. at 67).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 67).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 67).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 69).  After determining plaintiff's RFC (R. at 70), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 74).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 74-75).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 76).

**III.  Did the ALJ err in finding that plaintiff's mental impairments could not be medically determinable or were non-severe, and in failing to consider his mental impairments when assessing plaintiff's RFC?**

An impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques, and must be established by medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. §§ 404.1508, 416.908.  Evidence to establish a medically determinable impairment must come from acceptable medical sources.  20 C.F.R. §§ 404.1513(a), 416.913(a).

5

The burden of proof at step two is on the plaintiff. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[2] Williams, 844 F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). A claimant must provide medical evidence that he or

---

[2] Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

6

she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c), § 416.912(c).

SSR 85-28 (Medical impairments that are not severe) states the following:

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. <u>If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process</u>.
>
> ..........
>
> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

1985 WL 56856 at *3, 4 (emphasis added).[3]

The step two determination is based on medical factors alone. <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir. 2004); <u>Williamson v. Barnhart</u>, 350 F.3d 1097, 1100 (10th Cir. 2003); <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988). The step two requirement is generally considered a de minimis

---
[3] SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).

screening device to dispose of groundless claims; thus, reasonable doubts on severity are to be resolved in favor of the claimant. Field v. Astrue, Case No. 06-4126-SAC, 2007 WL 2176031 at *4 (D. Kan. June 19, 2007); Brant v. Barnhart, 506 Fed. Supp.2d 476, 482 (D. Kan. 2007); Samuel v. Barnhart, 295 F. Supp.2d 926, 952 (E.D. Wis. 2003); see Lee v. Barnhart, 117 Fed. Appx. 674, 676-677 (10th Cir. Dec. 8, 2004)(Step two is designed to weed out at an early stage those individuals who cannot possibly meet the statutory definition of disability. While the mere presence of a condition or ailment is not enough to get the claimant past step two, a claimant need only make "de minimus" showing of impairment to move on to further steps in the analysis); Church v. Shalala, 1994 WL 139015 at *2 (10th Cir. April 19, 1994)(citing to SSR 85-28, the court stated that step two is an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint); Newell v. Commissioner of Social Security, 347 F.3d 541, 547 (3rd Cir. 2003)(reasonable doubts on severity are to be resolved in favor of the claimant).

At step two, the ALJ found that:

> in the absence of laboratory or clinical findings or medical observations validating symptoms **the existence of any mental impairment cannot be medically determined or is non-severe**.

(R. at 69, emphasis added). The ALJ imposed no mental limitations in plaintiff's RFC.

The ALJ gave substantial weight to the opinion of Dr. Nystrom (R. at 68), who conducted a mental status examination of plaintiff on February 29, 2012 (R. at 379-381). Dr. Nystrom stated that plaintiff's responses were attempts to emulate psychotic or schizophrenic responses, and that he was largely noncompliant with some bizarre responses included (R. at 380). Dr. Nystrom concluded that there was no psychological disorder identified that would prevent plaintiff from being able to understand and remember simple instructions; plaintiff was capable of sustained concentration, persistence, and keeping pace in a work setting. Plaintiff should be able to maintain appropriate social interactions with coworkers, supervisors, and the general public (R. at 381).

On January 23, 2013, Dr. Wilkinson, a state agency psychologist, reviewed the record and concluded that plaintiff's mental impairments were not severe (R. at 129-130). On March 22, 2013, Dr. Stern, another state agency psychologist, concluded that plaintiff's impairments do not limit his mental ability to do basic work activities (R. at 147-148). Dr. Stern indicated that he saw a diagnostic page from Dr. Schell with diagnoses of multiple mental impairments and indications of depression, irritability and hallucinations, but Dr. Stern

9

stated that Dr. Schell's observations are not supported by other evidence in the file (R. at 148). The ALJ gave substantial weight to the opinions of Dr. Nystrom, Dr. Wilkinson and Dr. Stern (R. at 68-69).

On March 17, 2012, Dr. Schicker performed a consultative evaluation on the plaintiff. In his report, he noted that plaintiff reports a history of schizophrenia with both visual and auditory hallucinations (R. at 385, 387). Dr. Henderson performed a consultative evaluation on the plaintiff on January 10, 2013 (R. at 391-394). He stated:

> Although the patient does not report this today, old charts show both visual and auditory hallucinations. Suicidal ideations in the past. He has been on medical management.

(R. at 394). This was not mentioned by the ALJ in his decision.

Plaintiff has been in mental health treatment with Dr. Schell, a psychologist, from February 9, 2013 through February 11, 2014. Dr. Schell saw plaintiff during that period on 24 occasions (R. at 402-411, 465-549). He gave his initial diagnostic impressions on February 9 and 24, 2013 (R. at 397-398, 400-401). On September 26, 2013, Dr. Schell filled out a medical statement that plaintiff had bipolar disorder with psychotic features (R. at 415-416). On March 24, 2014, Dr. Schell filled out a medical source statement-mental, opining that plaintiff was markedly limited in 18 out of 20 categories.

Dr. Schell indicated that this statement sets forth his professional opinion of plaintiff's limitations, and further indicates that he excluded from consideration all limitations which Dr. Schell believed resulted from plaintiff's conscious malingering of symptoms (R. at 581-582). Dr. Schell also set forth his diagnosis of plaintiff (R. at 583-584), which was consistent with his initial diagnosis in February 2013 (R. at 397-398).

The ALJ stated that the other evidence in the file does not support Dr. Schell's findings and opinions (R. at 69). However, the ALJ failed to mention the report from Dr. Henderson on January 10, 2013 that, although plaintiff did not report it, old charts show both visual and auditory hallucinations, and suicidal ideations in the past (R. at 394). Furthermore, the treatment records of Dr. Schell over a one year period (24 sessions) consistently state that plaintiff's symptoms are interfering with his ability to function on a daily basis in activities of daily living, socializing, work, school, communications and cognitive thinking (R. at 407, 469, 472, 476, 481, 485, 487, 497, 501, 505, 508, 512, 516, 521, 526, 533, 536, 541, 545, 549). On December 17, 2013, Dr. Schell gave plaintiff the Saint Louis University Mental Status Examination and the Mini-Mental State Examination. Test results showed that plaintiff fell within the dementia range and suggested strong

evidence of dementia (R. at 482). These test results were not mentioned by the ALJ.

The ALJ stated that "overall," it appears that the findings of Dr. Schell are based on plaintiff's "subjective reports." The ALJ noted that the medical evidence shows that plaintiff is not fully credible in his allegations of disabling impairments, nor is the assessment of Dr. Schell consistent with other medical evidence. For these reasons, the ALJ accorded little weight to the opinions of Dr. Schell (R. at 69).

The ALJ discounted the opinions of Dr. Schell because he believed that those opinions were based on plaintiff's subjective reports. the ALJ instead gave greater weight to Dr. Nystrom, who saw plaintiff one year before plaintiff began treatment with Dr. Schell; the ALJ also gave greater weight to the opinions of Dr. Wilkinson and Dr. Stern, who both relied on the report from Dr. Nystrom. Dr. Wilkinson did not have before him the treatment records of Dr. Schell. Dr. Stern only had before him the initial diagnoses of Dr. Schell in February 2013 (R. at 148); he did not have before him the treatment records from 23 subsequent treatment sessions by Dr. Schell.

In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was

based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

Subsequently, in the case of Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. See Langley, 373 F.3d at 1121 (holding that ALJ may not reject a treating physician's opinion based on speculation). We find no support in the record for the ALJ's conclusion. Nothing in Dr. Covington's report indicates that he based his opinion on claimant's subjective complaints, and the ALJ's finding ignores all of Dr. Covington's examinations, medical tests, and reports. Indeed, the ALJ's discussion of Dr. Covington omits entirely his March 22, 2001 examination and report. His April 3, 2001 statement might well have been based on his recent first-hand

> examination and observation of claimant
> during this examination, performed less than
> two weeks earlier, rather than on claimant's
> subjective complaints, as the ALJ
> speculated. See Morales v. Apfel, 225 F.3d
> 310, 317 (3d Cir.2000) (noting that the
> treating physician's opinion may "reflect
> expert judgment based on a continuing
> observation of the patient's condition over
> a prolonged period of time").

121 Fed. Appx. at 823-824.

As Langley makes clear, the ALJ must have a legal or evidentiary basis for asserting that a medical source report was based only on plaintiff's subjective complaints. However, the ALJ did not cite to a legal or evidentiary basis for his assertion that the opinions of Dr. Schell were based on plaintiff's subjective reports. In fact, Dr. Schell saw plaintiff on 24 occasions from February 9, 2013 through February 11, 2014, and provided extensive treatment records. As the court stated in Victory, Dr. Schell's assessment might well have been based on his first-hand examination and observation of the plaintiff during the 24 treatment sessions, rather than relying on plaintiff's subjective reports, as the ALJ speculated.[4]

Furthermore, the practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. Thomas v. Barnhart, 147 Fed. Appx. 755, 759-760 (10th Cir. Sept. 2, 2005); Miranda v. Barnhart, 205 Fed. Appx.

---

[4] Although this issue was raised by plaintiff in his brief (Doc. 11 at 19-20); defendant failed to address this issue in their brief.

14

638, 641 (10th Cir. Aug. 11, 2005). A psychological opinion may rest either on observed signs and symptoms or on psychological tests. Langley v. Barnhart, 373 F.3d 1116, 1122 (10th Cir. 2004); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). The ALJ cannot reject a psychologist's opinion for the reason that it was based on a claimant's responses because such rejection impermissibly substitutes the ALJ's judgment for that of the psychologist. It is not the ALJ's prerogative to substitute his own judgment for that of the psychologist. Thomas, 147 Fed. Appx. at 760; Miranda, 205 Fed. Appx. at 641; see McCune v. Colvin, Case No. 13-1207-SAC (D. Kan. Sept. 23, 2014; Doc. 28 at 9-12); Reeder v. Colvin, Case No. 13-1201-SAC (D. Kan. Sept. 11, 2014; Doc. 22 at 11-13); Glaze v. Colvin, Case No. 13-2129-SAC (D. Kan. Aug. 6, 2014; Doc. 15 at 8-11); Price v. Colvin, Case No. 13-1052-SAC (D. Kan. March 11, 2014; Doc. 15 at 14-15); Stamps v. Astrue, Case No. 12-1100-SAC (D. Kan. Feb. 20, 2013; Doc. 18 at 9-11).

The ALJ relied on mental assessment information that largely predated the treatment by Dr. Schell (24 sessions over a 1 year period).[5] The opinions to which the ALJ gave significant weight were rendered prior to, and therefore could not account for, most of the evidence in the administrative record regarding

---

[5] As noted above, the assessments by Dr. Nystrom and Dr. Williamson predated the treatment records and evaluation of Dr. Schell, and Dr. Stern only had before him the initial assessment and diagnosis by Dr. Schell on February 9, 2013, and not the subsequent 23 treatment sessions.

15

plaintiff's mental health, including any deterioration in his mental health that may have occurred. Kreger v. Social Security Administration, 2015 WL 3514888 at *8-9 (D. Kan. June 4, 2015).

In addition, the opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient

explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

On the facts of this case, the court finds that the ALJ did not provide a legally sufficient explanation for rejecting the opinions of plaintiff's treatment provider, Dr. Schell. The ALJ relied on a one-time only examination assessment and two assessments that only reviewed the record and which did not have before them most, if not all, of the treatment records and assessments from Dr. Schell. Furthermore, as noted above, the ALJ lacked a legal or evidentiary basis for asserting that the findings of Dr. Schell are based on plaintiff's subjective complaints.

Defendant's brief did note that the ALJ relied on the fact that plaintiff had no significant mental health treatment (apparently prior to the treatment by Dr. Schell), including medication, to support his finding that plaintiff did not have a medically determinable mental impairment (Doc. 14 at 9). However, in the case of Grotendorst v. Astrue, 370 Fed. Appx. 879, 882-883 (10th Cir. March 22, 2010), the ALJ found that claimant's anxiety and depression were not severe because there was no objective medical evidence that she had been treated for anxiety or depression. The court held as follows regarding a step two evaluation:

> the regulations set out exactly how an ALJ
> is to determine severity, and consideration
> of the amount of *treatment* received by a
> claimant does not play a role in that
> determination. **This is because the lack of
> treatment for an impairment does not
> necessarily mean that the impairment does
> not exist or impose functional limitations.**
> Further, attempting to require treatment as
> a precondition for disability would clearly
> undermine the use of consultative
> examinations. Thus, the ALJ failed to follow
> the regulations in reaching her
> determination that Ms. Grotendorst's mental
> limitations were not severe at step two of
> the sequential evaluation.

370 Fed. Appx. at 883 (emphasis added).

The ALJ clearly erred by relying on plaintiff's lack of treatment. Furthermore, as noted above, the ALJ erred because he lacked a legal or evidentiary basis for asserting that Dr. Schell based his findings on plaintiff's subjective reports. In addition, Dr. Schell treated plaintiff for a full year after the mental health assessments relied on by the ALJ. The ALJ should have also considered the portion of Dr. Henderson's report on the history of schizophrenia. On remand, the ALJ should discuss that portion of Dr. Henderson's report, who stated in January 2013 that old charts show both visual and auditory hallucinations, and suicidal ideation in the past (R. at 394).

Finally, when determining whether there is a medically determinable impairment, and whether it is severe, the ALJ failed to follow the case law that clearly indicates that step

two requires only a "de minimis" showing of the existence or severity of an impairment.  Step two is designed to screen out claims that are totally groundless from a medical viewpoint.  Reasonable doubts on the existence or severity of an impairment are to be resolved in favor of the claimant.  By finding that the existence of a mental impairment cannot even be medically determined, it is clear that the ALJ gave no consideration to the impact, if any, of plaintiff's mental impairments on his RFC findings.

In light of the treatment records of Dr. Schell, which largely post-date the assessments relied on by the ALJ, the fact that the ALJ lacked a legal or evidentiary basis for asserting that the findings of Dr. Schell are based on plaintiff's subjective complaints, the general case law that generally accords greater weight to the opinions of treatment providers, the fact that only a "de minimis" showing be made of the existence and severity of an impairment at step two, and the ALJ's erroneous reliance on the lack of treatment, the court finds that substantial evidence does not support the ALJ's statement that the existence of a mental impairment cannot be medically determined or is non-severe.  On remand, the ALJ will need to properly evaluate the evidence relating to plaintiff's mental impairments.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 9th day of May 2017, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge